**UNITED STATES DISTRICT COURT**          **EASTERN DISTRICT OF TEXAS**

| | |
|---|---|
| UNITED STATES OF AMERICA | § |
| | § |
| *versus* | §   CASE NO. 1:14-CR-118 |
| | § |
| PAUL OZEN, JR. | § |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Paul Ozen, Jr.'s ("Ozen") *pro se* Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i) (#73).  The Government filed a response in opposition to the motion (#76).  Having considered the motion, the Government's response, and the applicable law, the court is of the opinion that the motion should be denied.

I.      Background

On December 4, 2014, a federal grand jury in the Eastern District of Texas returned a one-count Indictment charging Ozen with Conspiracy to Distribute and Possess With Intent to Distribute 28 Grams or More But Less Than 280 Grams of Cocaine Base, in violation of 21 U.S.C. § 846.  On February 4, 2015, Ozen pleaded guilty to the charged offense pursuant to a non-binding plea agreement.  Subsequently, on May 13, 2015, the court sentenced Ozen to 190 months' imprisonment, to be followed by a 5-year term of supervised release.  The United States Court of Appeals for the Fifth Circuit dismissed the direct appeal of his conviction and sentence as untimely on March 30, 2017 (#56).  Ozen previously filed a *pro se* Application for Modification of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (#62), which the court denied by written order on June 28, 2021 (#70).  Ozen is currently housed at Federal Correctional Institution El Reno ("FCI El Reno"), located in El Reno, Oklahoma.  His projected release date is June 28, 2027.

II.     Analysis

    A.     Controlling Law

On December 21, 2018, former President Trump signed the First Step Act of 2018 into law. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The Act, in part, amended 18 U.S.C. § 3582(c), which gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment:

> (A) the court, upon motion of the Director of the Bureau of Prisons ("BOP"), or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

B.      Exhaustion of Administrative Remedies

Prior to the First Step Act, only the Director of the BOP could file a motion seeking compassionate release.  *United States v. Jackson*, 27 F.4th 1088, 1089 (5th Cir. 2022); *see United States v. Franco*, 973 F.3d 465, 467 (5th Cir.) ("Prior to the passage of the First Step Act . . . courts lacked the power to adjudicate motions for compassionate release."), *cert. denied*, 141 S. Ct. 920 (2020); *Tuozzo v. Shartle*, No. 13-4897, 2014 WL 806450, at *2 (D.N.J. Feb. 27, 2014) (denying petitioner's motion for compassionate release because no motion for his release was filed by the BOP).  The First Step Act amended § 3582(c) by providing a defendant the means to appeal the BOP's decision not to file a motion for compassionate release on the defendant's behalf.  *Jackson*, 27 F.4th at 1089; *United States v. Cantu*, 423 F. Supp. 3d 345, 347 (S.D. Tex. 2019); *United States v. Bell*, No. 3:93-CR-302-M, 2019 WL 1531859, at *1 (N.D. Tex. Apr. 9, 2019).  The plain language of the statute, however, makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *Franco*, 973 F.3d at 467 (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional but that it *is* mandatory"); *United States v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020) ("Even though [the] exhaustion requirement does not implicate [the court's] subject-matter jurisdiction, it remains a mandatory condition."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he exhaustion requirement . . . presents a glaring roadblock foreclosing compassionate release.").

The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).

Thus, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden received the request.  18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies.  Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)); *United States v. Harris*, 812 F. App'x 106, 107 (3d Cir. 2020); *United States v. Springer*, 820 F. App'x 788, 791 (10th Cir. 2020) (defendant "was required to request that the BOP file a compassionate-release motion on his behalf to initiate his administrative remedies" (citing *Raia*, 954 F.3d at 595)); *Alam*, 960 F.3d at 833-34; *United States v. Soliz*, No. 2:16-190-3, 2020 WL 2500127, at *3 (S.D. Tex. May 14, 2020) ("§ 3582(c)(1)(A) does not provide this Court with the equitable authority to excuse [defendant's] failure to exhaust his administrative remedies or to waive the 30-day waiting period." (quoting *United States v. Reeves*, No. 18-00294, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020))).

Here, Ozen submitted a request for compassionate release to the warden of his facility on December 27, 2022.  As set forth in the request, Ozen's sole reason for seeking a reduction in sentence is:  "The [U]nited States Attorney General is now treating crack cocaine the same as powder cocaine and because this represents a reduction in the sentences for crack cocaine cases I am now requesting such a reduction under the compassionate release statute."  There is no indication that the warden ever responded to Ozen's request.  The Government acknowledges that

Ozen has exhausted his administrative remedies.  Although Ozen complied with the exhaustion requirement before filing the current motion, nothing in his motion indicates that extraordinary and compelling reasons exist to release him from confinement.

> C.      Criteria for Release

The United States Court of Appeals for the Fifth Circuit has held that when a defendant moves for compassionate release, he must satisfy three criteria.  *United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022) ("[A] prisoner seeking compassionate release must overcome three hurdles." (quoting *Jackson*, 27 F.4th at 1089)); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  First, he must meet one of two conditions listed in § 3582(c)(1)(A)—either the defendant has extraordinary and compelling reasons that warrant a reduction under 18 U.S.C. § 3582(c)(1)(A)(i) or the defendant is at least 70 years of age, has served at least 30 years in prison, and meets the additional requirements of 18 U.S.C. § 3582(c)(1)(A)(ii).  *Shkambi*, 993 F.3d at 391; *see Rollins*, 53 F.4th at 358.  Second, the defendant "must show that compassionate release is consistent with the applicable policy statements from the [United States Sentencing Commission ("Commission")]."  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at 358. Third, the defendant "must convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors."[1]  *Shkambi*, 993 F.3d at 392; *accord Rollins*, 53 F.4th at

---

[1] Section 3553(a) directs courts to consider:  the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guideline ("U.S.S.G.") provisions and policy statements; any pertinent policy statement of the Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim.  18 U.S.C. § 3553(a).

358; *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir.), *cert. denied*, 142 S. Ct. 299 (2021);

*United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021).

Section 3582(c)(1)(A)(i) does not define the "extraordinary and compelling reasons" that may merit compassionate release. Rather, Congress elected to delegate its authority to the Commission. *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287; *Shkambi*, 993 F.3d at 392. Prior to the passage of the First Step Act, the Commission issued a policy statement set forth in U.S.S.G. § 1B1.13, which, along with its commentary, describes the reasons that qualify as extraordinary and compelling.[2] However, § 1B1.13 references only motions filed by "the Director of the [BOP]"—not an individual defendant.[3] Consequently, the Fifth Circuit has held that when a defendant files a motion for compassionate release on his own behalf, the Commission's policy statement set forth in § 1B1.13 is not applicable because that policy statement governs only motions filed by the Director of the BOP. *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

---

[2] In Application Note 1 to § 1B1.13 of the U.S.S.G., the Commission previously defined "extraordinary and compelling reasons" to include the following four categories of circumstances: (i) certain medical conditions of the defendant; (ii) the defendant is 65 years or older and meets other requirements; (iii) the defendant's family has specified needs for a caregiver; and (iv) other reasons in the defendant's case that establish an extraordinary and compelling reason. U.S.S.G. § 1B1.13 cmt. n.1.

[3] U.S.S.G. § 1B1.13 was last amended on November 1, 2018. Until recently, the Commission has been unable to amend § 1B1.13 to incorporate the changes wrought by the First Step Act due to the lack of a quorum. The Commission consists of seven voting members and, per statute, requires four members for a quorum to amend the guidelines. 28 U.S.C. §§ 991(a), 994(a). On August 4, 2022, the United States Senate confirmed seven new members to the Commission. The Commission now has a quorum for the first time in over three years. The newly constituted Commission issued proposed amendments to the Sentencing Guidelines on April 27, 2023, with an effective date of November 1, 2023.

The proposed amendments, however, revise § 1B1.13(a) to reflect that a defendant is now authorized to file a motion under 18 U.S.C. § 3582(c)(1)(A), making the policy statement applicable to both defendant-filed and BOP-filed motions. The amendments also make two structural changes to § 1B1.13.  First, the description of the permissible bases for a reduction in sentence is moved from the Commentary to the policy statement itself.  Second, Application Notes 2 and 3 are modified and are moved into the policy statement as new subsections (e) and (d). New subsection (d) adopts the same language as Application Note 3, which states that pursuant to 28 U.S.C. § 994(t), rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for purposes of § 1B1.13, but adds that rehabilitation of the defendant while incarcerated may be considered in combination with other circumstances in determining whether a sentence reduction is warranted.  Application Note 2 provided that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."  New subsection (e) retains this instruction without change.

Because the proposed amendments have not yet been adopted, the court continues to view the Commission's policy statement contained in § 1B1.13 and the commentary thereto as providing guidance regarding the types of reasons that may be deemed sufficiently "extraordinary and compelling" to warrant compassionate release. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir.) ("Although not dispositive, the commentary to § 1B1.13 informs [the court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."), *cert. denied*, 141 S. Ct. 2688 (2021); *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) (upholding denial of compassionate release and recognizing that the court was

7

guided in its analysis by the commentary to U.S.S.G. § 1B1.13).  A review of dictionary definitions also sheds light on the meaning of these terms.  *See Escajeda*, 58 F.4th at 186.  The word "extraordinary" is defined as "going beyond what is usual, regular, or customary . . . exceptional to a very marked extent," whereas the word "compelling" is defined as "forceful . . . demanding attention . . . convincing."  *Extraordinary*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *Compelling*, MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY (11th ed. 2007); *see Escajeda*, 58 F.4th at 186; *United States v. Mitchell*, No. 15-20609, 2021 WL 1827202, at *2 (E.D. Mich. May 7, 2021).  "Courts have interpreted 'extraordinary' in the context of compassionate release as 'beyond what is usual, customary, regular, or common,' and a 'compelling reason' as 'one so great that irreparable harm or injustice would result if the relief is not granted.'"  *Mitchell*, 2021 WL 1827202, at *2 (quoting *United States v. Murphy*, No. 15-20411, 2020 WL 2507619, at *5 (E.D. Mich. May 15, 2020); *United States v. Sapp*, No. 14-20520, 2020 WL 515935, at *3 (E.D. Mich. Jan. 31, 2020)); *see Escajeda*, 58 F.4th at 186.  Hence, to prevail, a prisoner seeking compassionate release must "show that he 'face[s] some extraordinarily severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner' that leads 'irresistibly' to the conclusion that the prisoner has a 'singular' and 'remarkable' need for early release."  *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *1 (5th Cir. June 22, 2023) (quoting *Escajeda*, 58 F.4th at 186).

### 1.    Attorney General's Memorandum

On December 16, 2022, the Attorney General of the United States issued a memorandum for all federal prosecutors recommending that in crack cocaine cases, "prosecutors should advocate

for a sentence consistent with the guidelines for powder cocaine rather than crack cocaine.  Where

a court concludes that the crack cocaine guidelines apply, prosecutors should generally support

a variance to the guidelines range that would apply to the comparable quantity of powder cocaine."

*See* Memorandum for All Federal Prosecutors:   Additional Department Policies Regarding

Charging, Pleas, and Sentencing in Drug Cases, Op. Att'y Gen. 5 (2022).  Ozen contends that the

issuance of this memorandum is extraordinary and compelling and that his sentence for conspiracy

to distribute crack cocaine should be reduced accordingly.  The court, however, disagrees with

this notion.  As the court held in *United States v. Farley*, "[t]he internal policy of the DOJ is

irrelevant to this Court's analysis."  No. 5:20-CR-00018-KDB-DSC-1, 2023 WL 2544328 , at *2

(W.D.N.C. Mar. 16, 2023).  "Rather, the Court is guided by the statute passed by Congress and

the Sentencing Guidelines, both of which recognize a distinction between crack cocaine and

powder cocaine.  The Court therefore finds that the change in DOJ internal policy does not

constitute an extraordinary and compelling reason for a reduction."  *Id.*  This court concurs.

It is well settled that policy statements and guidance issued by the Attorney General "do[]

not legally bind prosecutors, or, more importantly, the courts."  *United States v. Reed*, 576 F.

App'x 60, 62 (2d Cir. 2014) (citing *United States v. Canori*, 737 F.3d 181, 183-84 (2d Cir.

2013)).  "Department of Justice guidelines and policies do not create enforceable rights for

criminal defendants."  *United States v. Wilson*, 413 F.3d 382, 389 (3d Cir. 2005) (recognizing

that DOJ guidelines "do not have the force of law") (citing *United States v. Gomez*, 237 F.3d 238,

241 n.1 (3d Cir. 2000), *cert. denied*, 532 U.S. 984 (2001)); *accord United States v. Fernandez*,

231 F.3d 1240, 1246 (9th Cir. 2000); *United States v. Blackley*, 167 F.3d 543, 548-49 (D.C.

Cir.), *cert. denied*, 528 U.S. 868 (1999); *United States v. Myers*, 123 F.3d 350, 356 (6th Cir.),

*cert. denied*, 522 U.S. 1020 (1997); *United States v. Piervinanzi*, 23 F.3d 670, 682 (2d Cir.),

*cert. denied*, 513 U.S. 904 (1994); *United States v. Craveiro*, 907 F.2d 260, 264 (1st Cir.), *cert.*

*denied*, 498 U.S. 1015 (1990).  In *United States v. Cooks*, the Fifth Circuit found that the district

court's refusal to grant an acquittal based on the prosecutor's alleged violation of DOJ guidelines

was not plain error, noting that "[s]everal sister circuits have held that the Department of Justice

guidelines and policies do not create enforceable rights for criminal defendants."  589 F.3d 173,

184 (5th Cir. 2009), *cert. denied*, 559 U.S. 1024 (2010).  "A court is not required to enforce an

agency regulation unless compliance with the regulation is mandated by the Constitution or federal

law."  *United States v. Wilson*, 614 F.2d 1224, 1227 (9th Cir. 1980) (citing *United States v.*

*Caceres*, 440 U.S. 741, 749-51 (1979)).

Hence, Ozen's reliance on the Attorney General's Memorandum provides no basis for

relief.

### 2.    Rehabilitation

Ozen further contends that he "has made good progress with his time in the B.O.P."  As

in his prior motion, Ozen states that he has completed various programs and education courses.

Ozen also asserts that he has experienced "a more complete shift" by obtaining his G.E.D. as well

as a trade for plumbing while in the BOP, which he maintains "is one of the defining factors which

accounts for change of direction and a productive reintegration into the community."  Regarding

rehabilitation of the defendant, the proposed amendments recognize:  "Pursuant to 28 U.S.C.

§ 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason

for purposes of this policy statement."  Nonetheless, the amendments add a proviso that states:

"However, rehabilitation of the defendant while serving the sentence may be considered in

combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted."  U.S.S.G. § 1B1.13(d).

Therefore, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."  28 U.S.C. § 994(t); *see Shkambi*, 993 F.3d at 392; *United States v. Brooker*, 976 F.3d 228, 237-38 (2d Cir. 2020) (holding that a district court's discretion in sentencing is broad; however, there is a "statutory limit on what a court may consider to be extraordinary and compelling . . . [and] '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" (quoting 28 U.S.C. § 994(t))); *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone.").  In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)).  Further, "making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at *2 (E.D. Wis. Mar. 9, 2020).  Contrary to Ozen's contention, he has not maintained a disciplinary history without any incident reports to date; rather, he has incurred at least two disciplinary violations while incarcerated, as discussed in this court's prior Memorandum and Order (#70).  While Ozen appears to have maintained a relatively good disciplinary record, the Seventh Circuit has found a similar argument not to be extraordinary and

compelling.  *See United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (rejecting compassionate release of a prisoner reasoning that "[m]ost nonviolent criminals maintain good disciplinary records").

Thus, although Ozen lists a number of commendable achievements and laudable goals, he has not presented sufficiently extraordinary and compelling accomplishments or circumstances to merit compassionate release under the facts of this case. *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021) (finding defendant's efforts at rehabilitation and plans to start a new life elsewhere to be commendable and recognizing the unusual burdens he faced in prison but finding those considerations not to undermine the factors that led to his original sentence—his offense, his criminal history, and the need for deterrence); *see also United States v. Boyd*, No. 3:17-CR-37-TAV-DCP-4, 2021 WL 5094903, at *4 (E.D. Tenn. Nov. 2, 2021) (the court, while recognizing defendant's efforts to improve himself, did not find his rehabilitation efforts to be so extraordinary as to outweigh the other sentencing factors); *United States v. Willsey*, No. 3:00-cr-00438-HZ, 2021 WL 4462889, at *2 (D. Or. Sept. 28, 2021) (although finding defendant's steps toward rehabilitation to be laudable, the court ruled that they did not present an extraordinary circumstance that would justify compassionate release, particularly given the seriousness of his offenses of conviction); *United States v. Rounds*, No. 10-CR-239S (2), 2021 WL 4437170, at *4 (W.D.N.Y. Sept. 28, 2021) (commenting that defendant's efforts at rehabilitating himself were laudable and should be continued, but concluding that they did not alone or in combination with his other arguments constitute an extraordinary and compelling reason for compassionate release).  Similarly, the court hopes that Ozen will continue

on the path to rehabilitation, but declines to exercise its discretionary authority under § 3582 at this time based on his rehabilitation efforts. *See Lewis*, 2021 WL 4519795, at *3.

D.      Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *Keys*, 846 F. App'x at 276; *Shkambi*, 993 F.3d at 392; *Thompson*, 984 F.3d at 435 n.11 (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).   Ozen's offense of conviction stems from his participation in a drug-trafficking conspiracy in which he was found responsible for the distribution or possession with intent to distribute of 113.884 grams of cocaine base.

In September 2014, law enforcement officers commenced an investigation into Ozen's drug-trafficking activities.  During the course of the investigation, Ozen sold cocaine to various undercover officers ("UC") and confidential sources ("CS") in Beaumont, Texas.  On September 24, 2014, Ozen sold 9.092 grams of cocaine base to a CS in exchange for $330 in impressed funds.  On September 30, 2014, he sold 21.921 grams of cocaine base to an UC for $650.  On October 10, 2014, Ozen sold 12.4 grams of cocaine base to an UC for $650, and on October 22, 2014, he sold 37.5 grams of cocaine base to an UC in exchange for $1,625 in impressed funds.  Finally, on November 19, 2014, Ozen agreed to sell 34 grams of cocaine base to an UC; however, officers apprehended him before the sale occurred.  Officers observed Ozen stopping at a residence while in route to the meeting location.  When stopped for a traffic violation, no contraband was found in his vehicle or on his person.  Officers subsequently discovered that Ozen had removed

the drugs from his vehicle prior to the traffic stop.  They later recovered 32.971 grams of cocaine base from a nearby residence.  Ozen admitted he was the sole owner of the cocaine base.

Ozen has an extensive criminal history, which includes prior convictions for possession of a controlled substance (crack cocaine) (4x), delivery of a controlled substance (crack cocaine) (2x), resisting arrest (2x), evading detention, and unauthorized use of a motor vehicle.  He also failed to comply with previous terms of probation.  Ozen accumulated 15 criminal history points and was classified as a career offender.  Additionally, while in BOP custody, Ozen incurred disciplinary infractions for possessing a hazardous tool and failing to stand count.  Ozen has a history of substance abuse which primarily involves the use of crack cocaine.  In view of the nature and circumstances of his offense of conviction, his extensive criminal history, his history of substance abuse, and his use of numerous aliases to conceal his criminal activities, the court cannot conclude that Ozen's early release from prison would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole.

In addition, granting Ozen compassionate release would fail to provide just punishment for his offense and promote respect for the law.  In *Chambliss*, the Fifth Circuit upheld the denial of compassionate release due to the defendant's not yet having served a sufficient portion of his sentence.  948 F.3d at 694.  The district court determined that the defendant's terminal illness "constitut[ed] 'an extraordinary and compelling reason for a sentence reduction' and that he '[did] not present a danger upon release,'" but denied release because "releasing [the defendant] after serving only 14 years of a 30-year sentence minimizes both the impact of [the defendant's] crime and seriousness of the offense."  *Id*. at 693-94.  "Moreover, the [district] court, citing the § 3553(a) factors, determined that requiring [the defendant] to serve the remainder of his sentence

14

would 'provide just punishment for the offense' and 'afford adequate deterrence to criminal conduct.'" *Id.*; *see Rollins*, 53 F.4th at 359-60; *Thompson*, 984 F.3d at 434-35 (observing that the courts that have granted compassionate release "largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns"); *accord United States v. Rodriguez*, 27 F.4th 1097, 1100 (5th Cir. 2022).  In the present case, releasing Ozen after he has served only 104 months (approximately 55%) of his 190-month sentence would similarly minimize the impact of his crime and the seriousness of his offense as well as fall short of providing just punishment and adequate deterrence to criminal conduct.

As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he behaved in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)).  Here, Ozen's track record is similarly a poor one.  There is no reason to believe that Ozen would not revert to his drug-dealing and drug-abusing behavior as well as engaging in other criminal activity if released from prison at this time.

III.    Conclusion

As before, Ozen has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere.  The 190-month sentence of imprisonment imposed upon Ozen for his offense of conviction comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from prison at this juncture.  Neither the length of his incarceration,

the issuance of a memorandum by the Attorney General regarding crack cocaine cases, nor his efforts at rehabilitation merit a reduction of sentence under these circumstances.  Consistent with the foregoing analysis, Ozen's *pro se* Motion for Sentence Reduction under 18 U.S.C. § 3582(c)(1)(A)(i) (#73) is DENIED.

SIGNED at Beaumont, Texas, this 11th day of July, 2023.

MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE